THE MUTUAL LIFE INSURANCE COMPANY OF BALTI-
MORE *vs.* WILLIAM A. McSHERRY, Surviving Ad-
ministrator of JOHN A. McSHERRY.

*Statute of Limitations—Instructions to Jury.*

A by-law of an insurance company provided that, " In case of the re-
signation, displacement or death of any director who holds any
portion of the guaranty capital, the securities or property con-
tributed by him to said guaranty capital, shall be returned him or
his representatives by the board thirty days after the election of his
successor." A director who had contributed to such guaranty capital
$10,000 in the form of a demand note, died, and one of his ad-
ministrators was elected a director in his place; and the co-adminis-
trator, who had charge of the funds, and the arrangement of the
estate, on the 20th of June, 1877, gave his check to the company for
$2,000, being twenty per cent. of the amount contributed by his
intestate to the guaranty capital, and received a certificate in con-
formity with a resolution of the company, and had the note for
$10,000 originally given by his intestate, returned to him at the
same time. Subsequently there was an allowance for this payment
in the administration account. The co-administrator who paid
the $2000, having died, the administrator who had been elected a
director, on the 6th of November, 1886, more than nine years after
such payment, brought suit as surviving administrator, to recover
the $2000, from the insurance company. The defendant pleaded
limitations, and the plaintiff replied, averring a fraudulent conceal-
ment of the cause of action by the defendant, and alleging that he
brought his action within three years from the time when he could,
by usual and ordinary diligence, discover the fraud. The proof
adduced in support of the averment of fraudulent concealment was
the testimony of the plaintiff that he was ignorant of the existence
of the by-law which authorized him to demand, and entitled him
to receive the note given by his intestate, and that he was told by
a person, whom he supposed was the manager of the company, that
the only way to obtain said note was to pay the assessment of $2000,
which he advised him to do. It appeared that the person referred
to was neither the president nor a director of the company. HELD :

1st.  That the plea of the Statute of Limitations was properly relied on, and the same was not rebutted by the evidence.

2nd.  That the jury should have been instructed that there was no legally sufficient evidence that the check of the 20th of June, 1877, offered in evidence, was given by its signer under any mistake of fact, or in consequence of any fraud, and that, therefore, under the pleadings and the evidence in the case the verdict must be for the defendant.

3rd.  That the jury should have been instructed that if they found that the plaintiff and his co-administrator were present at a specified meeting of the defendant's directors, and the plaintiff was present at a subsequent meeting, and both were cognizant of the proceedings as set forth in the minute book read in evidence, then the plaintiff could not maintain his action.

APPEAL from the Baltimore City Court.

The plaintiff recovered a judgment for $3000, and the defendant took this appeal.  The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, and BRYAN, J.

*Charles J. Bonaparte,* for the appellant.

*Milton W. Audoun,* and *J. Wilson Leakin,* for the appellee.

YELLOTT, J., delivered the opinion of the Court.

The appellant was authorized by the Act of incorporation to acquire property, not exceeding one hundred thousand dollars, as a guarantee capital for its business.   John A. McSherry, the appellee's intestate, was a director in said corporation, and, on July 1st, 1873, contributed $10,000 to this guarantee capital in the form of a demand note to the order of Rand, McSherry & Co., and endorsed by that firm.   John A. McSherry continued ˜to be a director of the corporation until November 28th, 1874, on which day

his death occurred, and the appellee and Joseph H. Audoun were appointed his administrators by the Orphans' Court of Baltimore City.

At the time of giving the note, already mentioned, there was a By-Law of the corporation which provided that

" In case of the resignation, displacement or death of any director who holds any portion of the guarantee capital, the securities or property contributed by him to said guarantee capital, shall be returned him or his representatives by the board thirty days after the election of his successor."

On the 5th of April, 1876, the appellee was elected a director to fill the vacancy caused by the death of the said John A. McSherry. There can be no doubt that, thirty days after his election to fill the vacancy, he and his co-administrator could, in conformity with the provisions of the By-Law, have demanded and would have been entitled to receive the note for $10,000 given by his intestate as his contribution to the guarantee capital of the company. But no such demand was made. On the same evening when the appellee was elected a director, he and his co-administrator being present, a resolution was unanimously adopted to withdraw all except twenty per cent. of the guarantee capital, that being necessary " to restore the reserve assets of the company to the required legal standard." It was further provided, by this and a subsequent resolution, that the company should issue scrip for the amount of the assessment; " such scrip, principal and interest, payable as soon as the reserve assets of the company shall exceed the reserve required by law and the amount of scrip authorized and $10,000." It is shown by proof in the record that the reserve assets of the company have never, since June 20th, 1877, exceeded the reserve required by law and the amount of scrip authorized to be issued by the resolution of April 5th, 1876, and $10,000.

On June 20th, 1877, the appellee's co-administrator, who had charge of the funds and all the arrangement of the estate, as is shown by the appellee's testimony, gave his check to the appellant for $2000, being 20 per cent. of the amount contributed by his intestate to. the guarantee capital, and received a certificate in conformity with the resolution of the company, and had the note for $10,000, originally given by his intestate, returned to him at the same time. There was subsequently an allowance for this payment in the administration account. The death of the appellee's co-administrator occurred in April, 1884, and this suit was instituted in November, 1886, for the purpose of recovering the $2000 paid by him in June, 1877; or more than nine years before the commencement of the action.

There are, in this record, no prayers for instruction's offered by the plaintiff in the Court below, and the only questions which can be considered and determined by this Court are such as are presented by the exceptions taken to the rejection of all the defendant's prayers except the sixth. The first prayer of the defendant asks the Court to say to the jury that, assuming the evidence of the plaintiff to be true, and giving him the benefit of every inference which could be reasonably drawn to his advantage from it or from that offered by the defendant, he has made out no such case as could entitle him to their verdict under the issues joined in the cause, and their verdict must, therefore, be for the defendant. The view which we take of this case renders it unnecessary to determine anything in relation to the ruling on this prayer.

The second and third prayers of the defendant are founded on its plea of limitation. The appellee, in his replication, meets this plea by averring a fraudulent concealment of his cause of action by the defendant, and alleges that he brought his action within three years from the time when he could, by usual and ordinary diligence, discover the fraud. These averments are put in issue by the

defendant's rejoinder. The proof adduced in support of the averment of fraudulent concealment is the testimony of the appellee that he was ignorant of the existence of the By-Law which authorized him to demand, and entitled him to receive, the note given by his intestate, and that one Dr. Lansburg told him that the only way to obtain said note was by paying the assessment of $2000, and advised him to do so. He supposed that Lansburg was the manager of the company as he was always advising and directing what should be done. But Lansburg was neither the president nor a director of the company, and it is perfectly apparent that he could not be its general and exclusive manager, as the Act of incorporation places the general management of the affairs of the company under the control of its president and board of directors. Lansburg might have been an agent of the company for the transaction of some part of its business. There is no proof of such agency, and, assuming that this person was the company's agent, in order legally to establish fraud practiced by the appellant, it would be necessary to show, by competent evidence, either that the agent was acting within the scope of his authority or that the principal had subsequently ratified what he had said and done. No such proof is disclosed by this record and therefore no fraud is imputable to the appellant. *Balto. & Ohio R. R. Co. vs. Wilkins*, 44 *Md.*, 27; *Carter vs. Howe Machine Co.*, 51 *Md.*, 298.

The appellee not only relies upon the alleged fraudulent concealment of the appellant, but also upon his own ignorance of the existence of the By-Law already referred to. The only proof in support of the averment of ignorance is to be found in his own testimony. He says he asked several of the directors and some of the employés in the office and that it seemed impossible to get a copy of these By-Laws. In contradiction of this testimony the president of the company when examined as a witness in the cause, said "that the Green Books, containing the By-Laws, had

been printed in 1873 to give information to all persons interested in the company, and were kept constantly in his office for distribution to any one who asked for them, and that the plaintiff by asking could, at any moment, have obtained a copy." As the appellee had important duties to perform not only as a director of the company, but also as an administrator of the estate of a decedent who had been extensively interested in the affairs of the company, it is manifest that his ignorance of the existence of the By-Laws was the result of that want of care and diligence which should have actuated him in the discharge of the duties devolving upon him in both capacities. As more than nine years had elapsed after the alleged cause of action had accrued before this suit was brought, the defendant had a legal right to rely upon the plea of limitation, and the Court below erred in rejecting its second and third prayers.

. The defendant's fourth prayer enunciates the proposition that there is no legally sufficient evidence that the check of the 20th of June, offered in evidence, was given by its signer under any mistake of fact or in consequence of any fraud, and, therefore, under the pleadings and all the evidence in the case the verdict must be for the defendant. From what has already been said in relation to alleged fraud on the part of the appellant, and mistake resulting from ignorance on the part of the appellee, it is apparent that this instruction should have been granted.

The fifth and seventh prayers of the defendant should also have been granted. They simply enunciate the proposition that if the plaintiff and his co-administrator were present at a meeting of the defendant's directors on April the 5th, 1876, and that the plaintiff was present at a meeting on May 2d, 1877, and that both were cognizant of the proceedings as set forth in the minute book read in evidence, then the plaintiff could not maintain this action. This would have been tantamount to saying that if the plaintiff was

fully informed of, or had the means of becoming acquainted with, all the facts connected with the transactions out of which this suit has grown, he could not avail himself of the averment of ignorance on his part, or of fraud practiced by his adversary in the cause so as to avoid the legal operation of the plea of limitation interposed as a bar to the remedy which he has sought to obtain.

From what has been said it follows that the judgment of the Court below must be reversed.

*Judgment reversed.*

(Decided th December, 1887.)